West, J.
Several matters are assigned for error on the record, of which those deemed material to be considered, are the following:
1. The ruling of the common pleas against the admission of evidence tendered by the plaintiff.
2. The overruling of plaintiff’s motion for a new trial.
3. The entering of judgment adverse to the application.
I. In the view entertained by the court, the ruling of the common pleas against the admission of evidence tendered by the plaintiff to prove the value of one half, or any portion of the defendant’s bridge, was not material. The issue sought to be established by it was not involved.
II. On the authority of The State Bank of Ohio v. Knoop (16 Howard (U. S.) 369) the seventh clause of the act of March 9, 1849, “ to confirm the charter of the Covington and Cincinnati Bridge Company” &c. (47 O. L. L. 269) which required that “ one-half the capital stock of the company actually paid in, shall, as soon as the company commences taking tolls, be placed upon the duplicate of the treasurer of Hamilton county, for taxation for all purposes,” must’ be held to have constituted a contract between the State of Ohio and the bridge company, prescribing a special rule of taxation, in a qualified sense, which could not be abandoned or modified without the concurrence of the contracting parties.
No special rate is limited by the clausé, nor is any fixed or ascertainable sum reserved as a royalty. The act does not require the levy or payment of any rate or sum as, or in lieu of, taxes. It determines and defines what shall constitute the subject of taxable valuation in all cases of assessments against the company, but leaves the rate and amount thereof, *460 and the mode of levying the same, and of enforcing ita payment, to the unlimited discretion of general and ever varying legislation.
It is probable that the clause had its origin in the general policy of taxation then prevailing in the State. The inequality of special rates, and the justice of taxation according to money values, had been recently recognized in the general legislation of 1846. True, the processes for attaining accuracy were not perfected, and equality could only be approximated ; but the theory was established, and has since been carried into the constitution of 1851, and the legislation had under it.
The general tax law of 1846, (44 O. L. 85,) in force when the defendant’s charter was granted,’ provided, in its first section, “that all property, whether real or personal, within this State, and the moneys and credits of persons residing therein, * * * shall be subject to taxation ; and such property, moneys and credits, or the value thereof, shall be entered on the lists of taxable property for that purpose, in the manner prescribed by this act.” In the tenth section it is enacted “ that each and every * * * bridge company in this State * * # shall list for taxation, by its president, secretary, or other proper accounting officer, the full amount of the capital stock of said company paid in by individual stockholders, at the true value of said stoc7c in money; and said stock so listed shall be subject to taxation, as provided in this act.”
If the defendant’s charter had been silent in regard to taxation, the “ full amount” of its capital stock would have been subject to the provisions of this general law. But a sense of the injustice that would be wrought by asserting an unlimited power of taxation over the full amount of the taxable interest in a great inter-state improvement, partly within the jurisdiction of two sovereignties, and equally depending for its existence on the co-operation of both, doubtless induced the legislature to concede and guarantee the exemption of one-half thereof from the power of Ohio taxation. But instead of employing negative words, the *461 guaranty assumed the form of au affirmative compact, subordinating one-half to the authority of general legislation, and exempting the other by the rule of expressio unius ex-clusio alierius. Such is clearly the origin, import and effect of the seventh clause of the defendant’s charter.
The rule of uniformity in making assessments on the subjects of taxable valuation, as required by the statute of 1846, is enjoined by the constitution of 1851, and preserved in the general legislation under it. If, then, the charter compact has not been surrendered by the contracting parties, and the subject of taxable valuation continues as guaranteed therein, the condition of the company is not different, under the operation of existing laws, from what it was originally.
III. That the compact may be surrendered by the concurrence of the contracting parties, and the bridge company submit its property, without restriction, to the general powers of tax legislation, we think is clear. It is equally obvious that the existing laws constitute an offer on the part of the State to accede to such surrender and abandonment. Had the bridge company indicated its acceptance of the-offer, and its assent to the substitution of the existing statutory subject of taxable valuation, in such authoritative manner as to make it available in its defense to this proceeding ? In its answer this is averred. By the reply it is denied. The affirmative of the proposition is with the company.
The production of sundry receipts for taxes paid by the company, on several parcels of real estate in Cincinnati, is insufficient to establish such acceptance.
The general tax law of 1852, (2 S. & C. 1439,) in its first sections, enacts that “ all property, whether real or personal, in this State; all moneys, credits, investments in bonds, stock, joint-stock companies, or otherwise, of persons residing therein; the property of corporations now existing, or hereafter created, * * * shall be subject to taxation;' and such property, * * * or the value thereof, shall be entered on the lists of taxable property for that purpose, in the manner prescribed by this act.” This is, in effect, and *462 almost literally, a transcript of .the first section of the act of 1846.
The sixteenth section enacts that “ the president, secretary or principal accounting officer of every # * * bridge company * * * shall list for taxation, verified by the oath or affirmation of the person so listing, all the personal property, which shall be held to include * * * such realty as may be. necessary for its *' * * operation,” &c. * * * “ moneys and credits of such company or corporation in this State, at the actual value in money, in the manner following : in all cases return shall be made to the several auditors of the respective counties where such property is situated. * * * It shall be the duty of the accounting officer aforesaid to make return to the auditor of State, in the month of May of each year, of the aggregate amount of all property returned by him, as required by the provisions of this act, to the several auditors,” &c. It also provides that all property so listedshall be subject to and pay the same taxes as other property listed in the ward, city or incorporated village or township.” This section modifies, and is substituted for section ten in the act of 1846.
The compact in the defendant’s charter was an agreement between it and the State, as to what should constitute its “ personal property ” subject to taxation; and the general law of 1846 prescribed the mode of listing it for that purpose. The mode of listing, prescribed by the act of 1852, by its own vigor, substituted that of 1852 ; but not the subject property to be listed. This, without the concurrence of the defendant, is determined by the charter compact.
Prior to 1867, the defendant had not, by act or resolution, indicated a purpose to abandon the stipulations of its charter, and accept the provisions of existing legislation. It neither made nor offered to make a return as therein required. It listed no “ personal property,” either including or excluding “ realty, moneys and credits.”
The payment of taxes on sundry parcels of realty suffered to remain on the duplicate after their purchase, was neither in substance nor form a compliance with, nor an acceptance of, *463 the general law. They were neither listed nor assessed under the law, as the property of a bridge company ; and it is doubtful whether, for this irregularity, the collection of the taxes could have, been enforced, or a sale for delinquency would have vested title. The payment was, therefore, voluntary, while the omission to make return under the law, well comported with the right and purpose to assert, in future, the rule of the compact.
The defendant claimed to be aided by the ninth clause of section three. It enacts that “ the taxes upon banks, banking companies, and all other joint stock companies, or corparations, of whatever kind, levied and collected in pursuance of the provisions of this act, shall be in lieu of any taxes which such bank, or banking company, or other joint stock company, or corporation, was, by former lazos, re- “ guired to pay.”
This provision is restricted, in its application, to corporations in whose charter has been reserved some special rate or royalty, as in the sixtieth section of the act incoporating the State Bank of Ohio. To give it any broader application is not demanded, for taxes imposed by repealable laws are always subject to the power of general legislation.
No i-ate was prescribed, nor royalty reserved, nor tax in any form required, by the charter of the defendant. In the manner and to the extent that the property of individuals was, so the one-half of the defendant’s capital stock was subject to taxation under the repealable law of 1846. If the ninth clause of section three, in the existing law, by which that of 1846 is repealed, be necessary to relieve the defendant from the operation of the latter, it is difficult to perceive why some similar legislation is not necessary to the like protection of individuals.
But the provisions of section three are unnecessary for and inapplicable to either. No statute, existing or former, required the assessment against or the payment by defendant of any tax other than the one in controversy. This was assessed by and under the existing law, of which section three is part. There is, therefore, no former law *464 against the requirements of which the defendant can be relieved by its provisions. It cannot then aid the defendant.
It is insisted, however, that, if the continued payment of taxes in the manner shown does not establish a surrender of the charter compact, and an acceptance, b}' the defendant, of the existing general laAv, the offer of its president, on the 14th of May, 1867, to make return in accordance with that law constituted such surrender and acceptance.
It is a reasonable and salutary limitation on the powers of corporation officers, that does not permit them to sui’render, abandon, or barter aAvay the franchises they are delegated to exercise and protect. This limitation is founded in a just and wise public policy.
The seventh clause of the defendant’s charter is a corporate-franchise. Its surrender, and the substitution of the statutory subject of taxation, by the president of the bridge-company, was not within the scope of his presidential functions, without its presumed authorization or subsequent ratification by the company.
Such authorization is not shown. No previous act or resolution of the corporation or its directory is exhibited, from which it can be inferred. So far as the record discloses, nothing done or declared by the company estopped it from asserting the franchise ; no authorization of, or direction to, the president tended to place it in a position to be concluded by his acts. His offer to make return, under the general laAV, was voluntary. The auditor was, therefore, not bound to accept and act upon it as authoritative.
Nor could any subsequent recognition of an unauthorized offer by the president, not accepted nor acted upon by the-officer of the revenue, render it effectual as a surrender and acceptance by the company, as of a date anterior to its approval. In the nature of things, a proposition not accepted nor carried into effect, is incapable of effectual ratification. It would be the legal confirmation of a nonentity.
If the officer had received the president’s return, and an official assessment, made or entered thereon, had been confirmed by subsequent payment, the surrender of the franchise,. *465 and the acceptance of the general law by the company, might well be presumed therefrom. It would be charged with notice of the official transaction, done in pursuance of law, by a public officer. But the evidence discloses nothing occurring prior to the filing of the answer herein, from which any connection of the corporation, either by previous authorization or subsequent approval, with the president’s offer to surrender the franchise, or his tender of the tax claimed, to be due under the general law, is presumptively shown. No public record of an assessment, in accordance with the rejected return, existed ; no payment on account of such public assessment was made; no previous authorization or subsequent affirmance, or evidence of sanction by the corporation, is exhibited, except the fact of pleading the president’s acts, in the defence of this proceeding.
This sanction, first disclosed in a judicial proceeding, and, for ought that appears, existing now for the first time, cannot have relation back to vitiate the ground of the proceeding originally valid and legal.
In the absence of an authorization b'y the company to its president, the auditor was not bound to act upon his proffered surrender of the corporate franchise. It was his clear right, therefore, to make the assessment on the basis of the compact, and, when made, it could not, after its delivery to the treasurer, be legally avoided by the company.
It is true, the auditor might and probably should have received the return, increasing the amount, if not satisfied therewith, to include the value of one-half the company’s bridge. Thus would have been raised the great jurisdictional question, so ably presented in argument, but which the view entertained by the court renders it' unnecessary to consider, whether the several limitations engrafted upon defendant’s charter, are not conditions of its grant. Whether the State did not confer, and the company accept, its franchise, upon the condition that it would not assert any right, power or liberty under its charter incompatible with these limitations; and whether it is not estopped, by the clear implication of the sixth clause, from denying the jurisdiction and *466 sovereignty of Ohio to the centre of its bridge, are grave inquiries, upon which the court is not now required to pass. Nor are we called upon to consider the effect of the president’s assertion, accompanying his offer to make return under the existing statute, that no portion of the defendant’s bridge, other than that situated north of the line of low water in the Ohio river, was subject to taxatioii in Ohio.
The compact in the seventh clause of the company’s charter not having been authoritatively waived or surrendered by it, the ássessment made by the auditor of Hamilton county, after the company commenced taking tolls, on one-half its capital stock actually paid in, was valid.
The judgment of the common pleas is, therefore, reversed, and the cause remanded for further proceedings.
Welch, C. J., and White, Dav and McIlvaine, JJ., concurred.